**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

**MARGARET ELLEN KIRBY,**

**Plaintiff,**

**v.**                                           **Case No.: 2:18-cv-01221**

**NANCY A. BERRYHILL,
Acting Commissioner of the
Social Security Administration,**

**Defendant.**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

This action seeks a review of the decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner") denying Plaintiff's applications for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. The matter is assigned to the Honorable Joseph R. Goodwin, United States District Judge, and was referred to the undersigned United States Magistrate Judge by standing order for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are Plaintiff's Brief in Support of Judgment on the Pleadings and the Commissioner's Brief in Support of Defendant's Decision, requesting judgment in her favor. (ECF Nos. 10, 11).

Having fully considered the record and the arguments of the parties, the undersigned United States Magistrate Judge respectfully **RECOMMENDS** that Plaintiff's request for judgment on the pleadings be **DENIED**, the Commissioner's

request for judgment on the pleadings be **GRANTED**, the Commissioner's decision be **AFFIRMED,** and that this case be **DISMISSED** and removed from the docket of the Court.

## I.    <u>Procedural History</u>

On September 26, 2014, Plaintiff Margaret Ellen Kirby ("Claimant"), protectively filed an application for DIB, alleging a disability onset date of June 1, 2013. (Tr. at 290, 292). Thereafter, on March 18, 2015, Claimant protectively filed an application for SSI, alleging a disability onset date of January 15, 2014. (Tr. at 291, 294, 311). Claimant alleged that she was disabled due to "Hepatitis C, Carpal Tunnel, Severe Depression, and PTSD Battered Women Syndrome." (Tr. at 311). The Social Security Administration ("SSA") denied Claimant's applications initially and upon reconsideration. (Tr. at 206-12, 217-19, 224-26). Claimant filed a request for an administrative hearing, which was held on July 11, 2017 before the Honorable Gina Pesaresi, Administrative Law Judge ("ALJ"). (Tr. at 104-34). By written decision dated October 13, 2017, the ALJ found that Claimant was not disabled as defined in the Social Security Act. (Tr. at 63-80). The ALJ's decision became the final decision of the Commissioner on June 14, 2018, when the Appeals Council denied Claimant's request for review. (Tr. at 1-7).

Claimant timely filed the present civil action seeking judicial review pursuant to 42 U.S.C. § 405(g). (ECF No. 2). The Commissioner subsequently filed an Answer opposing Claimant's complaint and a Transcript of Proceedings. (ECF Nos. 8, 9). Claimant then filed a Brief in Support of Judgment on the Pleadings. (ECF No. 10). In response, the Commissioner filed a Brief in Support of Defendant's Decision, to which Plaintiff filed a reply. (ECF Nos. 11, 12). Consequently, the matter is fully briefed and ready for resolution.

## II.   Claimant's Background

Claimant was 54 years old at the time of her alleged onset of disability and 58 years old at the time of the ALJ's decision. She completed high school and obtained a medical assistant certificate. (Tr. at 109). Claimant previously worked as food service manager, medical assistant, psychiatric aide, and waitress. (Tr. at 128-29).

## III.   Summary of ALJ's Decision

Under 42 U.S.C. § 423(d)(5), a claimant seeking disability benefits has the burden of proving a disability. *See Blalock v. Richardson,* 483 F.2d 773, 775 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security regulations establish a five-step sequential evaluation process for the adjudication of disability claims. If an individual is found "not disabled" at any step of the process, further inquiry is unnecessary and benefits are denied. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step in the sequence is determining whether a claimant is currently engaged in substantial gainful employment. *Id.* §§ 404.1520(b), 416.920(b). If the claimant is not, then the second step requires a determination of whether the claimant suffers from a severe impairment. *Id.* §§ 404.1520(c), 416.920(c). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." *Id.* If severe impairment is present, the third inquiry is whether this impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4 (the "Listing"). *Id.* §§ 404.1520(d), 416.920(d). If so, then the claimant is found disabled and awarded benefits.

However, if the impairment does not meet or equal a listed impairment, the adjudicator must assess the claimant's residual functional capacity ("RFC"), which is the measure of the claimant's ability to engage in substantial gainful activity despite the limitations of his or her impairments. *Id.* §§ 404.1520(e), 416.920(e). After making this determination, the fourth step is to ascertain whether the claimant's impairments prevent the performance of past relevant work. *Id.* §§ 404.1520(f), 416.920(f). If the impairments do prevent the performance of past relevant work, then the claimant has established a *prima facie* case of disability, and the burden shifts to the Commissioner to demonstrate, in the fifth and final step of the process, that the claimant is able to perform other forms of substantial gainful activity, given the claimant's remaining physical and mental capacities, age, education, and prior work experiences. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see also McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983). The Commissioner must establish two things: (1) that the claimant, considering his or her age, education, skills, work experience, and physical shortcomings has the capacity to perform an alternative job, and (2) that this specific job exists in significant numbers in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the SSA "must follow a special technique at each level in the administrative review process," including the review performed by the ALJ. 20 C.F.R. §§ 404.1520a(a), 416.920a(a). Under this technique, the ALJ first evaluates the claimant's pertinent signs, symptoms, and laboratory results to determine whether the claimant has a medically determinable mental impairment. *Id.* §§ 404.1520a(b), 416.920a(b). If an impairment exists, the ALJ documents his findings. Second, the ALJ rates and documents the degree of functional limitation resulting from the impairment according to criteria specified in 20 C.F.R. §§ 404.1520a(c), 416.920a(c).

Third, after rating the degree of functional limitation from the claimant's impairment(s), the ALJ determines the severity of the limitation. *Id.* §§ 404.1520a(d), 416.920a(d). A rating of "none" or "mild" in the four functional areas of understanding, remembering, or applying information; (2) interacting with others; (3) maintaining concentration, persistence, or pace; and (4) adapting or managing oneself will result in a finding that the impairment is not severe unless the evidence indicates that there is more than minimal limitation in the claimant's ability to do basic work activities. *Id.* §§ 404.1520a(d)(1), 416.920a(d)(1). Fourth, if the claimant's impairment is deemed severe, the ALJ compares the medical findings about the severe impairment and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment meets or is equal to a listed mental disorder. *Id.* §§ 404.1520a(d)(2), 416.920a(d)(2). Finally, if the ALJ finds that the claimant has a severe mental impairment, which neither meets nor equals a listed mental disorder, the ALJ assesses the claimant's residual mental functional capacity. *Id.* §§ 404.1520a(d)(3), 416.920a(d)(3). The regulations further specify how the findings and conclusion reached in applying the technique must be documented by the ALJ, stating:

> The decision must show the significant history, including examination and laboratory findings, the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4).

Here, the ALJ determined as a preliminary matter that Claimant met the insured status for disability insurance benefits through September 30, 2015. (Tr. at 68, Finding No. 1). At the first step of the sequential evaluation, the ALJ found that Claimant had not engaged in substantial gainful activity since her alleged onset date, January 15, 2014. (*Id.*,

Finding No. 2). At the second step of the evaluation, the ALJ found that Claimant had the following severe impairments: "alcoholism, hepatitis C, cirrhosis, and degenerative disc disease of the lumbar spine, thoracic spine, and cervical spine." (*Id.*, Finding No. 3). The ALJ also considered Claimant's carpal tunnel syndrome and depression, but concluded that such impairments were non-severe. (Tr. at 69-71). Under the third inquiry, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled any of the impairments contained in the Listing. (Tr. at 71, Finding No. 4). Accordingly, the ALJ determined that Claimant possessed:

> [T]he residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b).

(Tr. at 71-74, Finding No. 5). At the fourth step, with the assistance of a vocational expert ("VE"), the ALJ determined that Claimant was able to perform her past relevant work as a medical assistant as she actually performed it and as it is generally performed. (Tr. at 74-75, Finding No. 6). Therefore, the ALJ found that Claimant was not disabled as defined in the Social Security Act and was not entitled to benefits. (Tr. at 75, Finding No. 7).

## IV.    **Claimant's Challenge to the Commissioner's Decision**

Claimant raises a single challenge to the Commissioner's decision. She argues that the ALJ failed to evaluate the severity of her mental impairments at step two of the sequential evaluation, which Claimant contends resulted in the RFC assessment and step four finding not being supported by substantial evidence. (ECF No. 10 at 7). Specifically, Claimant argues that the ALJ provided faulty and inaccurate reasons for discrediting the finding of the examining state agency psychologist,  Kara Gettman-Hughes, M.A., who found that Claimant had a moderate limitation in concentration and persistence with a variable pace during her consultative examination, and the opinions of the non-

examining state agency psychologist, Jim Capage, Ph.D., who concluded that Claimant had severe mental impairments; was moderately limited in maintaining concentration, persistence, or pace; and was limited to unskilled work. (*Id.* at 9-13). Overall, Claimant argues that the ALJ selected pieces of evidence that supported the ALJ's findings, but ignored evidence to the contrary. (*Id.* at 13). Furthermore, Claimant argues that the step two error was not corrected at any subsequent step of the sequential evaluation because the ALJ did not include any analysis or limitations in the RFC finding relating to Claimant's mental impairments. (*Id.* at 13-14). Claimant contends that the limitations flowing from her mental impairments were certain to have a significant impact on the ALJ's RFC assessment, as well as the finding at step four that Claimant could return to her past relevant work as a medical assistant, a skilled position. (*Id.* at 14). Thus, she argues that given her vocational profile and limitation to light work, Medical-Vocational Rule 202.06 directed a finding of disability. (*Id.*).

In response to Claimant's arguments, the Commissioner contends that the ALJ correctly applied the special technique to assess the severity of Claimant's mental impairments and provided well-reasoned analysis of the opinion and clinical evidence that was supported by substantial evidence. (ECF No. 11).

## V.    Relevant Evidence

The undersigned considered all of the evidence of record, including documentation of medical examinations, treatment, evaluations, and statements. The information most relevant to Claimant's challenge is summarized as follows.

### A. *Treatment Records*

On April 1, June 27, and July 24, 2014, Claimant presented to Charleston Area Medical Center ("CAMC") Outpatient Care Center complaining of left wrist pain. (Tr. at

513, 522, 532). During all three examinations, Claimant denied anxiety and depression; her mood and affect were appropriate; and her insight and judgment were normal. (Tr. at 513, 515, 523-24, 533-34). However, during a routine follow-up appointment at CAMC Outpatient Care Center on November 21, 2014, Claimant complained of depression. (Tr. at 505). She reported that her symptoms were acute and worse than before, stating that she was feeling very sad with low energy. (*Id.*). On examination, Claimant's mood and affect were still appropriate, and she had normal insight and judgment. (Tr. at 508). Claimant advised that she took the anti-depressant and anti-anxiety medication Lexapro in the past and did not like it. (Tr. at 505). She was prescribed Zoloft. (Tr. at 509).

On April 4, 2015, Claimant presented to the Emergency Department at Thomas Memorial Hospital. She complained of mild pain in her head, face, and lower back after she tripped and fell into a space heater at home two days earlier. (Tr. at 416). Claimant denied any change in her mental status or depression. (*Id.*). She was still taking Zoloft. (*Id.*). Yet, the following month, on May 18, 2015, Claimant followed up at CAMC Outpatient Care Center regarding depression. (Tr. at 499). Claimant stated that her first episode of depression was in 2014, and her depression was worsening and uncontrolled. (*Id.*). She said that it was "somewhat difficult" to function and that her symptoms included depressed mood, difficulty concentrating, and fatigue. (*Id.*). Claimant's mood and affect were again appropriate, and she had normal insight and judgment on examination. (Tr. at 502). She was taking Zoloft as prescribed, but stated that it "was not working for her now." (*Id.*). Claimant was advised to go to Prestera Center for mental health treatment, but no changes were made to her medication. (*Id.*).

On July 6, 2015, Claimant was seen at CAMC Outpatient Center for Hepatitis C and alcohol abuse. She also reported anxiety and depression, but her mood and affect

8

were appropriate. (Tr. at 495-96). Claimant denied anxiety and depression during subsequent visits the following year on March 22 and April 4, 2016. (Tr. at 477, 481). She continued to exhibit an appropriate mood and affect, as well as normal insight and judgment. (Tr. at 478, 483-84).

On January 27, 2017, Claimant presented to CAMC Memorial Hospital complaining of nausea and a feeling of fullness in her throat. (Tr. at 702). On her review of systems, Claimant reported depression. (*Id.*). Her depression was listed as situational related to her back pain and inability to work. (*Id.*). She denied anxiety or any other psychological disorders. (*Id.*). Claimant subsequently denied having depression during her multiple clinical visits for leukopenia and thrombocytopenia on September 28 and October 26, 2017, as well as January 22, February 5, and February 12, 2018. (Tr. at 15, 26, 44, 55, 91).

### B. Evaluations and Opinions

On January 7, 2015, state agency psychologist, Ann Logan, Ph.D., stated that she could not conduct a psychiatric review technique because there was insufficient evidence of a medically determinable mental impairment in the record prior to Claimant's date last insured, which was, at that time, calculated as September 30, 2014. (Tr. at 139). On May 22, 2015, state agency psychologist, Jim Capage, Ph.D., agreed that there was insufficient evidence prior to Claimant's date last insured of September 30, 2014 to perform a psychiatric review technique. (Tr. at 150).

Thus, on June 22, 2015, Claimant had a consultative mental status examination performed by psychologist, Kara Gettman-Hughes, M.A. Claimant cited mental health issues as the primary reason that she could not maintain full-time employment. (Tr. at 432). However, she stated that the reason that she lost her most recent job in January

2014 was because "she did not have water and her employer would not allow her to miss work." (*Id.*). She related that the last time that she received mental health treatment, other than being prescribed medication by her family physician, was in 2010 when she was hospitalized for alcohol abuse and depression. (*Id.*). Claimant reported a history of abusive relationships, depression, anxiety, and substance abuse. (*Id.*). She stated that her daily activities included taking her medications and sitting in a recliner watching television. (Tr. at 435). On examination, Ms. Gettman-Hughes assessed Claimant's concentration to be moderately impaired based on her Digit Span Scale score of four and her persistence to be moderately impaired based on her ability to remain on task during the examination. (Tr. at 434). Her pace was recorded as "variable" during the evaluation. (*Id.*). Ms. Gettman-Hughes opined that Claimant suffered from chronic post-traumatic stress disorder, moderate major depressive disorder, alcohol use disorder in early partial remission, and cocaine use disorder in sustained full remission. (*Id.*).

On July 6 and September 14, 2015, Dr. Capage again reviewed Claimant's records to perform a psychiatric review technique, this time with the benefit of Claimant's consultative examination report. In the paragraph B criteria, Dr. Capage found that Claimant was only mildly functionally limited, except that she had moderate limitation in the area of concentration, persistence, or pace. (Tr. at 151, 165, 186). In support of his assessment, Dr. Capage explained that Claimant had a history of depression, anxiety, and alcohol and cocaine dependence, and she no longer used drugs, but continued to periodically abuse alcohol. (*Id.*). He noted that Claimant was prescribed an anti-depressant by her primary care provider and was diagnosed with mental conditions in her consultative examination. (*Id.*). In sum, Dr. Capage opined that although Claimant's mental impairments were severe, she was not more than moderately limited in the key

10

functional domains. (*Id.*). Dr. Capage found Claimant's statements concerning her symptoms and functional limitations to exceed the medical evidence of record and concluded that her allegations were only partially credible. (Tr. at 152, 166).

In terms of Claimant's mental RFC, Dr. Capage found that Claimant was moderately limited in her ability to carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically-based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. at 154-55, 185-86). Nevertheless, Dr. Capage assessed that Claimant could remember and carry out simple instructions and make judgments consistent with the functions of unskilled work. (Tr. at 155, 186). Dr. Capage did not provide any additional explanation for the mental RFC assessment. (*Id.*).

### C. Claimant's Statements

On April 7, 2015, Claimant completed an Adult Function Report, stating that she had no problems with personal care, did not need any reminders to take care of her personal needs or take medicine, prepared her own meals, and did chores daily. (Tr. at 359-60). Claimant further reported that, although she did not like to be around people, she left her home every few days on her own and used public transportation. (Tr. at 361). She shopped in stores for food and personal items twice per month. (*Id.*). She could manage her finances, a function which she said was unaffected by her impairments, and she watched television all day, every day. (Tr. at 361-62). Claimant stated she did not enjoy spending time with others, but did not need anyone to accompany her when she left home and did not have any problems getting along with family, friends, neighbors, authority figures, or others. (Tr. at 362-64). Claimant also noted that, despite the fact that

she did not handle stress well at all, she could follow written or spoken instructions "good" and handled changes in routine "fine." (Tr. at 363-64).

On July 11, 2017, Claimant testified at her administrative hearing. She stated that she could not work due to issues with her feet and back, which prevented her from sitting or standing for too long. (Tr. at 115). In terms of her daily activities, Claimant stated that she slept more than she was awake each day, which she surmised was due to her physical problems or depression. (Tr. at 123). Claimant testified that as a result of depression she did not eat, slept a lot, did not leave the house, and did not have "any interest whatsoever." (Tr. at 123). Rather, Claimant stated that all she did was lay in bed watching television. (Tr. at 123-24). However, she acknowledged that she went to the grocery store weekly or every other week. (Tr. at 126). Claimant testified that she was currently prescribed her third type of anti-depressant; she previously took Cymbalta, but she had more suicidal thoughts when taking it, which was a side effect of the medication. (Tr. at 124).

## VI. Scope of Review

The issue before the Court is whether the final decision of the Commissioner is based upon an appropriate application of the law and is supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In Blalock v. Richardson, the Fourth Circuit Court of Appeals defined "substantial evidence" to be:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

483 F.2d 773, 776 (4th Cir. 1973) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). When examining the Commissioner's decision, the Court does not conduct a *de novo* review of the evidence to ascertain whether the claimant is disabled. *Johnson v.*

*Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Instead, the Court's role is limited to insuring that the ALJ followed applicable regulations and rulings in reaching his decision, and that the decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456. If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." *Blalock*, 483 F.2d at 775.

## VII.    <u>Discussion</u>

Claimant's sole challenge to the Commissioner's decision is that the ALJ erred in evaluating the severity of her mental impairments at step two of the sequential evaluation, which she argues affected the ALJ's RFC finding and step four determination. At the second step of the sequential evaluation process, the ALJ concludes whether the claimant has an impairment or combination of impairments that is severe. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment is considered "severe" if it significantly limits a claimant's ability to do work-related activities. 20 C.F.R. §§ 404.1522(a), 416.922(a); SSR 96-3p, 1996 WL 374181, at *1. "[A]n impairment(s) that is 'not severe' must be a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities." SSR 96-3p, 1996 WL 374181, at *1 (citing SSR 85-28, 1985 WL 56856). As relevant to the instant matter, basic work activities include understanding, carrying out, and remembering simple instructions; using judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1522(b), 416.921(b).

As discussed, when a claimant alleges a mental impairment, the ALJ must apply the special technique at step two of the analysis. If the ALJ determines that the claimant

has a medically determinable mental impairment, the ALJ rates the degree of functional limitation in four broad categories, known as the "paragraph B" criteria, which include: (1) understanding, remembering, or applying information; (2) interacting with others; (3) maintaining concentration, persistence, or pace; and (4) adapting or managing oneself. 20 C.F.R. §§ 404.1520a(c), 416.920a(c). A rating of "none" or "mild" in the foregoing criteria will result in a finding that the impairment is not severe unless the evidence indicates that there is more than minimal limitation in the claimant's ability to do basic work activities. *Id.* §§ 404.1520a(d)(1), 416.920a(d)(1).

Importantly, the claimant bears the burden of proving that an impairment is severe, *Grant v. Schweiker,* 699 F.2d 189, 191 (4th Cir. 1983), and does this by producing medical evidence establishing the condition and its effect on the claimant's ability to work. *Williamson v. Barnhart,* 350 F.3d 1097, 1100 (10th Cir. 2003). The mere presence of a condition or ailment is not enough to demonstrate the existence of a severe impairment. Moreover, to qualify as a severe impairment under step two, the impairment must have lasted, or be expected to last, for a continuous period of at least twelve months and must not be controlled by treatment, such as medication. *Gross v. Heckler,* 785 F.2d 1163, 1166 (4th Cir. 1986). If the ALJ determines that the claimant does not have a severe impairment or combination of impairments, a finding of not disabled is made at step two, and the sequential process comes to an end. On the other hand, if the claimant has at least one impairment that is deemed severe, the process moves on to the third step. "[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater,* 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen v. Yuckert,* 482 U.S. 137, 153-54 (1987)); *see also Felton–Miller v. Astrue,* 459 F. App'x 226, 230 (4th Cir. 2011) ("Step two of the sequential evaluation is a threshold question with a de minimis

severity requirement.").

In evaluating the evidence at step two or subsequent steps of the sequential evaluation, the regulations in effect at the time of the ALJ's decision suggested "a hierarchy of medical opinions, with opinions by treating physicians generally being afforded the greatest weight, followed by examining sources, and finally, nonexamining sources." *Cook v. Colvin*, No. 2:15-CV-07181, 2016 WL 5661348, at *3 (S.D.W. Va. Sept. 29, 2016) (quoting *Bevans v. Colvin*, No. 3:13–12502, 2014 WL 4925431, at *3 (S.D. W. Va. Sept. 30, 2014)). Regardless of source, an ALJ was required to evaluate every medical opinion in accordance with the following factors: (1) whether the source has examined the claimant and the length and frequency of the examinations; (2) the nature and extent of any treatment relationship; (3) the extent to which the source's opinion is supported by the medical evidence in the record; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is rendered by a specialist in his or her area of specialty; and (6) other relevant factors." *Id.*; *see* 20 C.F.R. §§ 404.1527(c), 416.927(c). However, while the ALJ had to consider the relevant factors, the ALJ was not required to explicitly discuss each factor. *See Hardy v. Colvin*, No. 2:13-CV-20749, 2014 WL 4929464, at *2 (S.D.W. Va. Sept. 30, 2014).

As particularly relevant to this case, an "ALJ is not bound by the findings of state agency psychologists, although he must consider the findings as opinion evidence from highly qualified physicians and psychologists who are also experts in Social Security disability evaluation." *Cook*, 2016 WL 5661348, at *3 (quoting *Bellamy v. Astrue*, No. 2:10CV00084, 2011 WL 3679079, at *5 (W.D. Va. Aug. 23, 2011)). Furthermore, although an ALJ was required under the former regulations to give "good reasons" before rejecting the opinion of a treating source, there was no such requirement for non-treating source

15

opinions. *Id.* Rather, the ALJ was simply required to provide an explanation that was "sufficiently clear so that a court may meaningfully review the ALJ's weighing of the opinion." *Id.* (quoting *Miller v. Colvin*, 2:13–cv–31251, 2015 WL 917772, at \*18 (S.D. W. Va. Mar. 3, 2015)); *see also Bryant ex rel. Bryant v. Barnhart*, 63 Fed. Appx. 90, 95 (4th Cir. 2003). Critically, an ALJ's determination as to the weight to be assigned to a medical opinion is generally not disturbed absent some indication that the ALJ dredged up specious inconsistencies or did not give good reason for the weight afforded to a particular opinion. *Id.* (citing *Koonce v. Apfel*, 166 F.3d 1209, 1999 WL 7864, at \*2 (4th Cir. 1999)).

Here, the ALJ found at step two of the analysis that Claimant's depression was a medically determinable impairment. (Tr. at 69). Thus, the ALJ applied the special technique to evaluate whether her mental impairment caused more than a minimal limitation in Claimant's ability to perform basic mental work activities. (Tr. at 69-70). In the first functional area of understanding, remembering, or applying information, the ALJ found that Claimant was only mildly limited, noting the results of Claimant's consultative examination with Ms. Gettman-Hughes and Claimant's clinical records. (Tr. at 69). In the second area of interacting with others, the ALJ acknowledged that Ms. Gettman-Hughes assessed Claimant's social functioning to be moderately impaired during her consultative examination, but the ALJ nonetheless found Claimant to be only mildly impaired given that Claimant's treating providers repeatedly noted that Claimant had a normal mood and affect; she took public transportation; she went shopping regularly; and she reported no issues getting along with her family, friends, neighbors, authority figures, or others. (*Id.*).

In the area of concentration, persistence, or pace, which is the particular focus of Claimant's challenge to the Commissioner's decision, the ALJ again noted Ms. Gettman-

Hughes's moderate impairment finding during Claimant's consultative examination, but cited that shortly after that examination, Claimant denied having symptoms of depression, which the ALJ adjudged to indicate a positive response to treatment. (*Id.*). Further, the ALJ cited Claimant's affirmations that she could manage her money, did not need reminders to take medicine or tend to her personal needs, and had a "good" ability to follow instructions. (*Id.*).

The ALJ noted that Dr. Capage opined in July and September 2015 that Claimant's mental impairments caused mild functional limitations, except that Dr. Capage concluded that Claimant had moderate difficulty maintaining concentration, persistence, or pace. (Tr. at 69). However, the ALJ explained that she gave little weight to the opinion, because Claimant's date last insured moved forward one year from September 2014 to September 2015 and also because the treatment notes did not support moderate limitations. (Tr. at 70). The ALJ explained that the medical evidence of record showed that Claimant complained of depression to her primary care providers in November 2014 and May 2015 and was prescribed medication and referred to Prestera Center where she had previously received treatment in 2006 and 2007. (*Id.*). However, the ALJ noted that Claimant failed to follow up on the referral. Moreover, Claimant seemed to have responded well to treatment because she denied depressive symptoms at later appointments. (*Id.*).

Finally, in the area of adapting or managing herself, the ALJ found that Claimant had no limitation, noting that Claimant presented with proper hygiene, could perform activities of daily living without assistance, and, although she stated that she did not handle stress well, she handled changes in her routine "fine." (*Id.*). Ultimately, based on the fact that Claimant had no more than mild functional limitations as a result of her

mental impairments, and her depression did not cause more than minimal limitation in her ability to perform basic mental work activities, the ALJ found Claimant's depression to be non-severe. (Tr. at 69-70).

Claimant argues that the ALJ's reasons for declining to adopt the moderate functional limitations noted by the state agency psychologists are "inadequate and incorrect." (ECF No. 10 at 9). Accordingly, the undersigned will address the ALJ's stated reasons in turn. First, the ALJ noted that Claimant's date last insured ("DLI") was moved forward from September 30, 2014 to September 30, 2015. The ALJ explained that the state agency consultants found insufficient evidence prior to Claimant's September 2014 DLI to establish a medically determinable mental impairment, although Dr. Capage was able to provide an opinion on Claimant's SSI application as to her functioning at the time of Dr. Capage's opinions in July and September 2015. (Tr. at 69). Once the DLI was recalculated to September 2015, however, a year's worth of relevant evidence on Claimant's DIB application was brought to bear on the analysis. Indeed, Claimant first complained of depressive symptoms on November 21, 2014, which was after the original DLI used by the state agency consultants in analyzing Claimant's DIB application. (Tr. at 505). During the subsequent year, Claimant took Zoloft and had various examinations, which resulted in psychiatric findings. (Tr. at 416, 495-96, 499, 502). As a result, when the DLI was recalculated, there *was* sufficient evidence to establish a medically determinable mental impairment. For that reason, the ALJ gave little weight to the state agency consultants' opinions that there was insufficient evidence prior to Claimant's DLI to establish a medically determinable mental impairment. Contrary to Claimant's argument that "the ALJ's finding that Dr. Capage's opinion deserved little weight because of a change in the date last insured was not appropriate, nor was it logical," (ECF No. 12

18

at 3), the ALJ's rationale was very clearly supported by substantial evidence.

In assigning little weight to the consultants' opinions, the ALJ further explained that Claimant's treatment records did not support a finding that Claimant had any moderate mental functional limitations. The ALJ cited that Claimant never followed up on her primary care physician's referral for mental health treatment and she seemed to have responded well to treatment, because she denied depressive symptoms at later appointments. (Tr. at 70). Claimant contends that when the evidence is considered in its entirety, she "continued to have significant physical and mental symptoms that would detract from her ability to concentrate, persist, maintain pace, and the medication prescribed to alleviate these symptoms (Zoloft) was not effective." (ECF No. 12 at 5). Claimant asserts that "the ALJ did not thoroughly consider even those pieces of evidence that she cited in support of her findings." (*Id.* at 7).

Once again, contrary to Claimant's assertion, there is minimal reference to mental health issues after Claimant's alleged onset of disability, and the ALJ's analysis is representative of the record. Claimant denied anxiety and depression and had appropriate mood and affect with normal insight and judgment in April, June, and July 2014. (Tr. at 513, 515, 523-24, 533-34). Then, in November 2014, Claimant stated to her primary care provider during a routine follow-up appointment for her physical conditions that she had depressive symptoms. (Tr. at 505). Her mood and affect were appropriate and her insight and judgment were normal on examination, but Claimant was prescribed Zoloft. (Tr. at 508-09). In May 2015, Claimant stated that Zoloft "was not working for her now." (Tr. at 502). She was advised to go to Prestera Center for mental health treatment, and no change was made to her prescribed medication. (*Id.*). Thereafter, while Claimant reported anxiety and depression in July 2015, she denied such symptoms in March and

April 2016. (Tr. at 477, 483, 495). Claimant again reported depression in January 2017 on her review of systems during a visit for physical issues, but she denied depression in September and October 2017, as well as in January and February 2018. (Tr. at 15, 26, 44, 55, 91, 702). In addition, even when Claimant reported depression, her mood and affect were always noted to be appropriate and her insight and judgment were normal on examination. (Tr. at 496, 502).

Therefore, there is substantial evidence to support the ALJ's conclusion that Claimant seemed to respond well to treatment for depression, and that her records did not support any moderate functional limitations. The ALJ did not state that Claimant never again reported symptoms of depression after taking Zoloft, but that she responded well to treatment, which is reflected in the record. Moreover, the mere fact that Claimant was diagnosed with depression and prescribed antidepressants did not establish that she had a severe mental impairment. Rather, the ALJ appropriately considered whether the clinical records demonstrated any associated functional limitations. *Cook*, 2016 WL 5661348, at *8 (citing *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (noting that mere presence of a psychological disorder is not disabling unless accompanied by a showing of related functional loss)).

Furthermore, the ALJ appropriately considered the fact that Claimant did not follow up on her mental health referral to Prestera Center. *Id.* ("Plaintiff's treatment records indicate that while she at times took anti-depression medication and sought medical attention for panic attacks, she did not begin seeking regular mental health counseling [during the relevant period]."). The ALJ highlighted the lack of psychological treatment in the record. Although such a lack of treatment standing alone might not preclude a finding of a severe mental impairment, it is certainly proper for an ALJ to 'infer

that the mental impairment did not cause any workplace limitations if there is a lack of medical treatment for a mental impairment.'") (quoting *Lester v. Colvin*, No. 1:13CV759, 2015 WL 1458139, at *5 (M.D.N.C. Mar. 30, 2015)). For all of the above reasons, the ALJ's analysis of the opinion evidence is supported by substantial evidence.

In challenging the ALJ's step two analysis, Claimant also criticizes the ALJ's notation that she could manage money and perform activities of daily living, functions which Claimant argues "are more appropriately considered under the fourth domain – 'adapting and managing oneself,'" rather than her ability to maintain concentration, persistence, or pace. (ECF No. 10 at 12). However, the ALJ further cited that Claimant denied depressive symptoms after her consultative examination, stated that she did not need reminders to take her medications or care for herself, and assessed her ability to follow instructions as "good." (Tr. at 70). Claimant fails to show that the ALJ relied on improper bases to conclude that Claimant was only mildly limited in maintaining concentration, persistence, or pace. *See, e.g., Cook*, 2016 WL 5661348, at *7 (finding that the ALJ properly applied the special technique when "[w]ith respect to concentration, persistence, or pace, the ALJ emphasized Plaintiff's proficiency in handling money, paying bills, and managing a savings account, as well as her continued reading activity and her ability to follow instructions").

Finally, even assuming *arguendo* that the ALJ erred in analyzing Claimant's mental impairments at step two, such error would be harmless in this case because the ALJ found that Claimant had other severe impairments, proceeded with the sequential evaluation, and considered the effects of Claimant's mental impairments at subsequent steps of the sequential evaluation. Indeed, the ALJ specifically stated that the step two finding was not an RFC assessment and the ALJ specified that she incorporated the

degree of limitation found in the paragraph B mental function analysis into the RFC finding. (Tr. at 71); *see Cook*, 2016 WL 5661348, at *9-10 (stating that even if the ALJ erred at step two with respect to the claimant's mental impairments, such error would be harmless because the analysis proceeded and the ALJ stated that the RFC determination reflected the degree of limitation found pursuant to the special technique analysis). The ALJ explained that based on her stated analysis, Claimant did not have any mental limitations that would hamper her ability to perform skilled work. (Tr. at 75).

Overall, Claimant fails to identify any relevant conflicting evidence that the ALJ overlooked concerning the severity of her mental impairments, nor does she show that the ALJ failed to apply the correct law or made any other error that rendered her decision unsupported by substantial evidence. Claimant is simply asking the court to re-weigh the medical evidence and reach different conclusions than the ALJ, which is not the court's role in reviewing the Commissioner's decision. The court must uphold the Commissioner's decision if it is supported by more than a scintilla of evidence. It is not the province of the court under 42 U.S.C. § 405(g) to weigh the evidence or perform the special technique to evaluate the severity of a claimant's mental impairments. Where, as in this case, the ALJ considered the relevant evidence, provided logical reasons for the conclusions reached, applied the correct legal standards, and there is more than a scintilla of evidence to support the ALJ's findings, the court must affirm the Commissioner's decision. Therefore, the undersigned **FINDS** that the ALJ's step two analysis of the severity of Claimant's mental impairments is supported by substantial evidence. *See, e.g., Cook*, 2016 WL 5661348, at *7 (finding that the ALJ's step two finding that the claimant's mental impairments were non-severe and posed no more than mild functional limitations, contrary to the agency psychologist's opinion that the claimant had moderate

difficulties in maintaining social functioning and concentration, persistence, or pace, was supported by substantial evidence). *Id.*

## VIII.   Recommendations for Disposition

Based on the foregoing, the undersigned United States Magistrate Judge respectfully **PROPOSES** that the presiding District Judge confirm and accept the findings herein and **RECOMMENDS** that the District Judge **DENY** Plaintiff's request for judgment on the pleadings, (ECF No. 10); **GRANT** the Commissioner's request for judgment on the pleadings, (ECF No. 11); **AFFIRM** the decision of the Commissioner; **DISMISS** this action, with prejudice, and remove it from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown. Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Thomas v. Arn*, 474 U.S. 140 (1985); *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Goodwin, and Magistrate Judge Eifert.

The Clerk is directed to file this "Proposed Findings and Recommendations" and to provide a copy of the same to counsel of record.

**FILED**:  May 24, 2019

Cheryl A. Eifert
United States Magistrate Judge